UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

    Plaintiff,

    v.

J<small>UAN</small> Y<small>RORITA</small>,

    Defendant.
_____/

Case No. 16-cr-20593

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [#203] AND FINDING THE GOVERNMENT'S MOTION TO STRIKE PURPORTED REQUEST FOR COMPASSIONATE RELEASE MOOT [#192]**

**I. I<small>NTRODUCTION</small>**

In November 2017, Defendant Juan Yrorita pled guilty to one count of conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349. ECF No. 206, PageID.3564. Specifically, Defendant was involved in a multi-defendant Medicare conspiracy and executed fraudulent forms while working at Anointed Care Services ("Anointed"). *See id.* On March 29, 2018, Defendant was sentenced to 36 months imprisonment. ECF No. 123, PageID.1969.

Presently before the Court is a letter from the Defendant's wife requesting compassionate release for her husband. ECF No. 191. On July 27, 2020, this Court ordered the appointment of counsel to assist Defendant with the compassionate release request. ECF No. 198. On June 22, 2020, the Defendant's wife's letter was

incorrectly docketed as a motion instead of a letter, and the Government sought to strike the motion because the Defendant's wife is not a lawyer. ECF No. 192. Upon appointment of counsel, Defendant filed a supplemental Motion for Compassionate Release on August 10, 2020. ECF No. 203. In so far as the docketing error has been corrected and Defendant is now represented by counsel, the Government's Motion to Strike Purported Request for Compassionate Release is **MOOT** [#192]. The Government filed its Response in Opposition to the Defendant's Motion on August 17, 2020. ECF No. 206. Defendant filed his Reply on August 19, 2020. ECF No. 207. The Court held a hearing on the matter on August 21, 2020. For the reasons that follow, the Court will **GRANT** Defendant's Motion for Compassionate Release [#203].

## II. BACKGROUND

Defendant Juan Yrorita was involved in a multi-defendant conspiracy that included the submission of false Medicare claims for services "that had not been provided, were medically unnecessary, and/or that had been tainted by illegal kickbacks and bribes." ECF No. 206, PageID.3563. Specifically, Defendant worked as the Assistant Director of Nursing at Anointed and executed fraudulent documents, including false patient records. *Id.* at PageID.3564; ECF No. 117, PageID.1782.

Defendant's trial commenced on November 21, 2017. Four days into the trial, Yrorita pled guilty to one count of conspiracy to commit health care fraud and wire

fraud in violation of 18 U.S.C. § 1349.  ECF No. 206, PageID.3564.  He entered his guilty plea without a Rule 11 Plea Agreement with the Government.  ECF No. 203, PageID.3368.  On March 29, 2018, Defendant was sentenced to serve 36 months in custody.  ECF No. 123, PageID.1969.

Defendant now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of COVID-19.  ECF No. 203.  Defendant is sixty-five years old and is serving his sentence at Correctional Institution Moshannon Valley in Philipsburg, Pennsylvania.  Defendant is set to be released on November 27, 2020.  Defendant asserts that he has been eligible for home detention since August 11, 2020.  ECF No. 203, PageID.3368.

In his instant Motion, Defendant seeks early release from his term of imprisonment by arguing that he has served the majority of his sentence and that he is at an increased risk of severe complications from COVID-19.  Specifically, Defendant alleges that he is particularly vulnerable because of his age and history of diabetes, coronary artery disease, hypertension, and hyperlipidemia.  ECF No. 203, PageID.3372-3377.  Defendant asserts that these conditions amount to compelling and extraordinary circumstances and therefore requests that the Court grant him early release from his sentence.

### III. ANALYSIS

### A. Standard of Review

Title 18 U.S.C. § 3582(c)(1)(A) governs this Court's authority to consider motions for compassionate release. As amended by the First Step Act of 2018, the relevant statutory language provides that a court may grant compassionate release under the following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, a court must address two key questions. The first is whether a defendant has first exhausted all administrative remedies with the BOP. The second is whether, after considering "extraordinary and compelling reasons," as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), warrant a sentence reduction.

Moreover, a sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). U.S. Sentencing Guidelines Manual § 1B1.13 is the "applicable policy statement" which

4

this Court must comply with. This section explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). Further, a defendant must fit within at least one of four categories of "extraordinary and compelling reasons." Application Note 1 to U.S.S.G. § 1B1.13 provides, in relevant parts, when extraordinary and compelling reasons exist:

> (A) Medical Condition of the Defendant
>
> (ii) The defendant is (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> …
>
> (D) Other Reasons – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Here, Defendant asserts that his preexisting medical conditions, combined with his continued incarceration during the COVID-19 pandemic, "substantially diminish[] the ability of [Mr. Yrorita] to provide self-care within the environment of a correctional facility." ECF No. 203, PageID.3371 (citing U.S.S.G. § 1B1.13, cmt. 21 n.1(A)(ii)). Moreover, Defendant argues that these circumstances are also "extraordinary and compelling" pursuant to U.S.S.G. § 23 1B1.13 cmt.1(D). *Id.* at PageID.3371-3372.

### B. Exhaustion

The First Step Act of 2018 amended 18 U.S.C. § 3582 to permit defendants to move for compassionate release themselves. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018). In a defendant-initiated motion for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting thirty days from when the warden at the facility received his or her request. 18 U.S.C. § 3582(c)(1)(A).

The Sixth Circuit recently held that while the administrative exhaustion requirements under § 3582(c)(1)(A) are not jurisdictional, they are mandatory. *United States v. Alam*, 960 F.3d 831, 2020 U.S. App. LEXIS 17321 (6th Cir. 2020). In *Alam*, the Sixth Circuit rejected defendant's argument that the "unprecedented" nature of the COVID-19 pandemic should serve as an exception to the statute's exhaustion requirement. *Id.* at *11 (concluding that "[t]hirty days hardly rises to the level of an unreasonable or indefinite timeframe.") (internal quotation marks omitted).

Here, the Government does not raise the issue of exhaustion. ECF No. 206, PageID.3565. Indeed, Defendant petitioned the facility administrator of Moshannon for his release on April 23, 2020. *Id.* The facility administrator denied that request. *Id.*; ECF No. 203, PageID.3370.

Accordingly, Defendant has exhausted his administrative remedies with the BOP.

### C. Extraordinary and Compelling Reasons

As discussed *supra*, for a court to grant compassionate release, a defendant must also demonstrate that "extraordinary and compelling reasons" exist to warrant a reduction in sentence. 18 U.S.C. § 3582(c). The Sentencing Commission has provided guidance about what constitutes "extraordinary and compelling reasons" in Section 1B1.13 of the Sentencing Guidelines. U.S.S.G. § 1B1.13. These reasons are classified in four categories: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) additional reasons "other than, or in combination with" the first three elements. *Id.* at cmt. n.1(A)-(D).

Here, Defendant argues that his age and preexisting medical conditions, including type 2 diabetes, coronary artery disease, hypertension, and hyperlipidemia, put him at an increased risk of severe complications from the novel COVID-19 disease. ECF No. 203, PageID.3372-3377. Defendant's medical conditions are all well-documented in his medical records from Moshannon and his Presentence Investigation Report. *See, e.g.*, ECF No. 205-1, PageID.3409-3410.

According to the Centers for Disease Control and Prevention ("CDC"), at least three out of Defendant's four medical conditions place him at an elevated risk for COVID-19 severity. *See People Who Are at Higher Risk for Severe Illness*,

Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated August 14, 2020).  He is also almost sixty-six years old, meeting the CDC's classification of adults sixty-five years and older who are at higher risk of COVID-19 complications.  The Government does not contest these facts, instead "acknowledg[ing] that under current CDC guidance, the Defendant's age and medical conditions (particularly his coronary issues and diabetes) place him at a risk of severe complications[] should he contract COVID-19."  ECF No. 206, PageID.3566.

Nearly all of Defendant's conditions independently fit into the CDC's definition of moderate to severe risk; together, "his conditions [] exacerbate each other, placing him in a much more vulnerable position than a healthy person, if he were to get COVID-19."  *United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, at *6 (E.D. Mich. Jul. 22, 2020) (quoting *Howard v. United States*, No. 16-20222-2, 2020 WL 2615509, at *3 (E.D. Mich. May 22, 2020)).  Other district courts have granted compassionate release upon similar findings of numerous medical conditions that place them at a significantly higher risk for severe illness from COVID-19.  *See, e.g., United States v. Doshi*, No. 13-CR-20349, 2020 WL 2556794 (E.D. Mich. May 20, 2020) (granting compassionate release for an elderly inmate with hypertension, diabetes, asthma, hyperlipidemia, and other preexisting

8

conditions); *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020) ("The CDC also states that individuals with underlying medical conditions, such as a chronic lung disease, a serious heart condition, and liver disease, have a higher risk of severe illness . . . Miller suffers from all three.").

In sum, upon consideration of precedent for granting compassionate release and the particular facts of his case, Defendant has presented extraordinary and compelling circumstances under 18 U.S.C. § 3582(c).

### 1. Determination of Dangerousness to the Community and the 18 U.S.C. § 3553(a) Factors

The Court must also consider the sentencing factors under 18 U.S.C. § 3553(a) and determine whether such factors support or undermine the sentence reduction. *See* U.S.S.G. § 1B1.13. The factors set forth in § 3553(a) include a defendant's history and characteristics; the nature and circumstances of the offense; due consideration of the seriousness of the offense; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by the defendant; and providing him or her with any necessary correctional services and treatment. *See* 18 U.S.C. § 3553(a). Moreover, a district court must determine that the defendant does not present a danger to the community, as provided in 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13.

Here, the Government argues that Defendant should not be granted compassionate release because he is the subject of an ICE detainer, "and thus he

would be committed into ICE custody upon his release from Moshannon." ECF No. 206, PageID.3567. It is safer for Defendant to finish the remainder of his sentence at Moshannon, the Government contends, because a facility transfer heightens Defendant's risk of COVID-19 exposure and "there are no guarantees that conditions in any given ICE facility will be superior to those at Moshannon." *Id.* at PageID.3568.

Both parties note that Defendant only has three months left of his sentence before he will be released on the immigration detainer. Defendant asserts, however, that the ICE detainer should not serve as an impediment to his early release because he "has a pending immigration proceeding in which an immigration Judge will determine whether to re-adjust his status to a green card holder." ECF No. 203, PageID.3383. Defendant explains in a footnote that his immigration proceedings are halted until he can obtain a medical exam, which he can only do once he is in ICE custody. *Id.* ("Once this hurdle is overcome, the Immigration Judge can decide whether to grant Mr. Yrorita a green card through his wife who is a naturalized citizen.").

While the Court notes the Government's concern with Defendant's transfer and heightened susceptibility to COVID-19, mere speculation about the conditions at an ICE facility is an insufficient basis to deny compassionate release. Additionally, an analysis of the § 3553(a) factors demonstrates that Defendant's

10

release is warranted at this time: Defendant is just three months short of completing his thirty-six-month sentence, he has no prior criminal history, and he previously complied with all of his pretrial release conditions. ECF No. 203, PageID.3381. While it may be true that serving the entirety of a sentence would have a stronger deterrent effect under normal circumstances, a longer sentence during a pandemic would also have a greater potential for exposing an individual like Defendant, whose immune system is significantly compromised. *See United States v. Gardner*, No. 14-cr-20735-001, 2020 WL 4200979, at *8 (E.D. Mich. July 22, 2020). Indeed, "the Court must weigh the value of deterrence against increasing the threat of a possibly lethal infection." *Id.* Here, the Court finds that the possibility of exposure outweighs the value of deterrence.

Finally, the facts of this case do not indicate that Defendant will be a danger to the community if released. As an initial matter, it appears that Yrorita will not be immediately released but will instead be bound by his immigration detainer. Beyond his immigration proceedings, however, Defendant has provided the Court with a sound home plan that includes living in the Metro Detroit area with his wife. Additionally, Defendant's underlying criminal conduct was not a crime of violence, and he has no prior criminal history. In light of these factors, the Court concludes that Defendant is not a danger to the community upon his release.

Accordingly, all three components—the extraordinary and compelling circumstances; the § 3553(a) factors; and a finding that Defendant would not be a danger to the public—weigh in favor of immediate compassionate release.

### IV. CONCLUSION

For the reasons discussed herein, **IT IS ORDERED** that Defendant's Motion for Compassionate Release [#165] is **GRANTED**. His sentence is reduced to time-served. The Government's Motion to Strike Purported Request for Compassionate Release is **MOOT** [#192].

**IT IS FURTHER ORDERED** that Defendant be **IMMEDIATELY RELEASED** from custody, without holding him for a 14-day quarantine period at the Moshannon Valley Correctional Institute.

This Court's findings could apply to any future custodial situation Defendant may be placed in as he moves forward with his immigration proceedings.

**IT IS SO ORDERED.**

            s/Gershwin A. Drain_____
            GERSHWIN A. DRAIN
            UNITED STATES DISTRICT JUDGE

Dated: August 21, 2020

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on Juan Yrorita, No. 54991-039, Correctional Institution Moshannon Valley, 555 Geo Drive, Philipsburg, Pennsylvania, 16866 on August 21, 2020, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Case Manager